## THE LUCY D.

*(District Court, S. D. New York.   July 14, 1884.)*

1. COLLISION—TOW—RIVER NAVIGATION.

In passing an established harbor, like Elizabethport, New Jersey, on the border of a narrow stream, tugs with large tows, which require the use of nearly the whole channel, are bound to take extraordinary precautions in giving notice of their approach, and to give, if needed, effective aid to vessels unwarily coming to anchor in places of danger; and such vessels, on receiving actual notice of approaching danger from such tows, which are in the habit of passing, are also bound to take immediate measures to get out of harm's way.

2. SAME—VESSEL AT ANCHOR—FAULT.

Where one of a fleet of 21 canal-boats came in collision at Elizabethport, New Jersey, at about 2 A. M., with a schooner which arrived there and came to anchor about 10 P. M., about 100 feet off the dock, in a place dangerous from such passing tows, *held*, both in fault.

In Admiralty.

*E. D. McCarthy*, for the libelant and the Wilbur.

*Owen & Gray*, for the schooner.

BROWN, J.   The libelant, who is the owner of the canal-boat Monitor, sues to recover for his damages occasioned by a collision with the schooner Lucy D., at about 2 o'clock in the morning of December 22, 1882, while the schooner was at anchor at Elizabethport. The Monitor was one of a fleet of 21 boats coming up to New York with the flood-tide, in tow of the steam-tug Wilbur, and was the outer boat of the fourth tier on the port side of the tow.   Under the new supreme court rule in admiralty, No. 59, upon the application of the defendant vessel, the steam-tug Wilbur has also been made a party defendant.   See 15 FED. REP. 162.

The Lucy D. sailed down to Elizabethport and arrived there at about 10 o'clock P. M., and came to anchor either off pig-iron dock, or two or three piers above, and from 100 to 200 feet out in the stream. The entire channel there is but 600 or 700 feet wide, and tows have been accustomed to come up with the flood-tide.   Just below the pig-iron dock is a considerable bend in the stream, so that the flood-tide sets tows coming up stream towards the pig-iron dock, thence for a short distance parallel with the stream, and then a little towards the opposite shore.   At the strength of the flood the current runs about three knots.   In coming round this bend, a tug with a tow upon a hawser, like the present, must go ahead at full speed, or the tow will run upon the docks or become unmanageable.   There can be no question, from the evidence, that the navigation of such tows through this narrow stream is attended with more or less of danger to vessels at anchor at Elizabethport.   The danger diminishes, however, the further vessels are anchored above the pig-iron dock, as the channel becomes wider above, and the flood-tide is deflected somewhat to the opposite shore.   Notwithstanding the custom for tugs with large

tows to come through this channel-way, they have no right to appropriate it to themselves exclusively. They must be held legally bound, when navigating with tows of such size and of an unwieldy character, to take all requisite precautions to see that other vessels are out of their path, or receive due notice and assistance to get out of the way. The master of the Lucy D. was a comparative stranger at Elizabethport, although he had been there some years before. He anchored within a reasonable distance of the piers, where vessels were formerly accustomed to anchor to some extent, but much less in late years, both from the decrease of shipping there, and probably from the greater danger from tows. Another vessel was at anchor but a short distance above him. There was more room further up, where he might have anchored as well. An hour or two before this collision he had notice from the helper of another tow that he was in a dangerous position. The pilot of the Stickney, a helper, which had passed down at about 11 or 12 o'clock to assist another tug and tow coming up ahead of the Wilbur, had shouted to this vessel, as he passed down, to get out of the way; but it is not proved that this notice was heard. Not long after, however, the Stickney returned, ahead of her tow, for the purpose of getting this schooner out of the way before her tow arrived. A line was got out to the schooner, and the Stickney undertook to pull her in nearer to the Jersey shore; but the line broke, and the schooner swung back to her place. The first tow, however, passed the schooner safely; but in doing so it grounded on the opposite shore, a little way above. The Wilbur following not long after, with her tow, avoided grounding, but the libelant's boat swung against the bows of the schooner, and received injuries from which it shortly afterwards sank.

I think the Lucy D. must be held to be chargeable with negligence, if not for anchoring so low down the stream as she did,—the captain being a stranger there,—yet certainly for not taking any steps of her own to move further inshore when the Stickney undertook to haul her further in, for this was the best possible evidence to the captain that he was in an improper and dangerous position. Notice was then, at least, given him that the Wilbur was to follow the previous tow; and there was ample time for the schooner to have been brought to a safe position, even by her own efforts, had she heeded the warning. *The Cachapool*, 7 Prob. Div. 217.

In a place like Elizabethport it is but reasonable, however, to hold that tugs carrying such large tows, which are so dangerous to shipping at anchor, should be required to take affirmative measures of their own in assisting to keep the channel clear in those places where they virtually need to appropriate it almost wholly to themselves; and to see that strangers arriving there, who do not fully know the room required by such tows, and who unwarily come to anchor in a dangerous place, should have timely notice, with the offer, if need be, of all necessary help to get out of the way. The same principle ap-

plies as in the case of an intended launch. *The Cachapool*, 7 Prob. Div. 217. Some of the evidence would indicate that the Stickney was designed to act in behalf of the Wilbur's tow in getting the Lucy D. out of the way. It does not clearly appear, however, whether the slight effort of the Stickney to move the Lucy D., after the first tow had passed, was a mere voluntary, friendly act, or whether the Stickney undertook this service by some definite arrangement in behalf of the Wilbur and her tow. In either event, the Stickney's services were evidently inefficient and faulty. Her lines broke at first, and afterwards no decisive measures were taken to assist the schooner; nor does the absolute necessity of her removal appear to have been decisively urged upon her, as certainly should have been done had she been anchored so far down stream as opposite the pig-iron dock.

On the whole, I feel bound to hold, considering the dangers of the place arising from the navigation of tows of such a character in so narrow a channel, that extraordinary precautions are incumbent upon those in charge of such tows; and that the Wilbur must in this case be held jointly responsible for the loss, for not having provided such effective measures as were fairly incumbent upon her, to see that no injury happened to vessels unwarily anchoring in that vicinity. Each must, therefore, pay half the damages, with costs, and a reference may be taken to ascertain the amount.